UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALEXANDER N. and AMY M. SOUSIE,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INDEMNITY COMPANY,<br><br>Defendant. | CASE NO. C17-5078 BHS<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Allstate Indemnity Company's ("Allstate") motion for summary judgment (Dkt. 61) and Plaintiffs Alexander and Amy Sousie's ("Sousies") motion for partial summary judgment (Dkt. 63). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies the motions for the reasons stated herein.

## I. PROCEDURAL HISTORY

On January 4, 2017, the Sousies served the Washington Insurance Commissioner with a complaint against Allstate. Dkt. 1-1. The Sousies assert a cause of action for breach of their insurance agreement and a violation of Washington's Insurance Fair Conduct Act. *Id*.

On February 16, 2018, Allstate filed a motion for summary judgment. Dkt. 61. On February 22, 2018, the Sousies filed a motion for partial summary judgment. Dkt. 63.

On March 12, 2018, the parties responded. Dkts. 77, 80. On March 16, 2018, the parties replied. Dkts. 82, 83.

## II. FACTUAL BACKGROUND

The Sousies previously lived in Maine with their five children. Dkt. 64, ¶ 1. Mr. Sousie owned a business with his father, Berry Sousie, that primarily sold and installed truck canopies. *Id.* The business was called The Cap Place. *Id.* In 2009, Berry Sousie suffered a stroke leaving him partially paralyzed and unable to assist his son in operation of the business. *Id.* ¶ 2.

The economic downturn of 2008 combined with Berry Sousie's stroke resulted in serious financial strain on the Sousies. *Id.* ¶¶ 4–5. In April 2011, the Sousies filed for Chapter 7 bankruptcy. *Id.* ¶ 5. As part of that proceeding, the Sousie were required to complete certain forms regarding their assets. Relevant to the instant matter, the Sousies completed a form disclosing their personal property. Dkt. 64-1. They declared that they possessed personal property worth a total of $3,000 with no single item worth more than $400. *Id.* Also relevant to the instant matter, Mrs. Sousie declares that nothing on any of the bankruptcy forms purported to require them to disclose any "tools" in their possession.[1] Dkt. 64, ¶¶ 9–11. Eventually, the bankruptcy court discharged the Sousies' debts and terminated the proceeding.

---

[1] While the schedule does not mention "tool," it does request disclosure of equipment used in business and a catch-all category of other personal property of any kind not already disclosed. Dkt. 64-1 at 4.

In 2013, the Sousies moved to Washington to live with Mrs. Sousie's parents. Prior to the move, Berry Sousie gave the Sousies many tools, some of which were used in the business and some of which Berry Sousie acquired for personal use. *Id*. ¶ 13. The Sousies rented a storage unit to store most of their personal property. *Id*. ¶ 14.

In September 2013, the Sousies purchased an insurance policy from Allstate. The policy covered all personal property owned or used by the Sousies. Dkt. 14-1. The policy excludes losses "in which any insured person has concealed or misrepresented any material fact or circumstance that exists at the time of the loss or occurrence." *Id*. at 26. The Sousies paid the yearly premiums for coverage through the year 2016. Dkt. 64, ¶ 16.

On January 7, 2016, an employee of the storage unit discovered that someone had broken into the Sousies' unit. *Id*. ¶ 21. The Sousies immediately went to the unit and cooperated with police investigating the incident. *Id*. ¶ 23. The police generated a report that lists the Sousies' alleged stolen items and values as follows: (1) large rollaway tool box with various automotive and body shop tools – $25,000, (2) Honda generator – $2,500, (3) fishing equipment – $600, (4) computer equipment – $1,500, and (5) propane stove – $200. Dkt. 64-3.

The Sousies notified their Allstate agent of the theft on the same day. Allstate's claims adjuster provided the Sousies with a spreadsheet to list the items that were stolen, the age of each item, the original purchase price, and the current cost to replace each item. Dkt. 64, ¶ 27. The Sousies listed 167 items ranging in price from unknown to $3,099.99 and in age from unknown to twelve years old. Dkt. 64-4. The total estimated replacement cost was $27,297.90. *Id*.

Mrs. Sousie claims that in April or May 2017 Allstate employee Peter Poulos contacted them regarding their claim. Mr. Poulos sent the Sousies a document titled "Sworn Statement in Proof of Loss." Dkt. 64, ¶ 33. Mrs. Sousie asserts that she did not understand the form and called Mr. Poulos seeking guidance on how to complete the form. *Id*. ¶ 34. She declares that Mr. Poulos directed her to insert certain numbers in blank spaces and, if she did so, he would take the form to his supervisors to approve and pay the claim. *Id*. ¶ 35. On the form, Mrs. Sousies indicated that the Actual Cash Value of the stolen property was $26,565, the total amount of damages based on the replacement cost value was $45,660, and the amount claimed was $45,660. Dkt. 64-5. The Sousies subsequently learned that these numbers were produced in a report that determined the replacement cost value, depreciation value, and actual cash value of the items based on the age and condition of the items. *See* Dkt. 39-1[2].

On June 23, 2016, Rick Wathen sent the Sousies a letter. He stated that he represented Allstate and requested that the Sousies sit for examinations under oath. Dkt. 64-6. Mr. Wathen also requested that the Sousies produce documents relating to the claim. *Id*. Mr. Wathen subsequently conducted both examinations under oath. *See*, *e.g.*, Dkt. 62-3 (transcript of Mr. Sousie's examination).

On September 26, 2016, Mr. Wathen sent the Sousies a letter denying their claim. Dkt. 64-8. Allstate denied the claim based on misrepresentation and concealment and lack of ownership. *Id*. Regarding the former, Mr. Wathen provided as follows:

---

[2] Even though this report is on Allstate's letterhead, the parties seem to agree that the calculations were completed by third-party Sten-Tel.

> [In the Sousies' sworn] statements to Allstate, they indicated that all information contained in the bankruptcy petition was true and correct. It appeared they also indicated all information contained in their Proof of Loss attached Inventory sheets are true and correct. However, both statements cannot be true. If both statements were true the bankruptcy petition would correspond to the inventory as submitted to Allstate. Your clients have subsequently conceded that the information in one, or both the bankruptcy petition and claim submitted to Allstate is not correct.

*Id*. at 2. Regarding lack of ownership, Allstate asserted that all property that was not disclosed in the bankruptcy petition was, by law, property of the bankruptcy trustee. *Id*.

On October 3, 2016, the Sousies' attorney, Matthew Edwards, wrote Mr. Wathen requesting reconsideration of the denial. Dkt. 64-9. Mr. Edwards asserted that Allstate could not deny a claim based on alleged general misrepresentation and requested further clarification as to specific misrepresentations made by the Sousies. *Id*. Mr. Edwards also asserted that Allstate failed to consider certain exceptions regarding whether a trustee would seek possession of the property even if the Sousies were required to disclose the specific item of personal property. *Id*.

On October 19, 2016, Mr. Wathen responded declining to reconsider Allstate's denial. Dkt. 64-10. Regarding the misrepresentations, he stated as follows:

> It is Allstate's position that your clients have misrepresented and concealed material facts by maintaining inconsistent positions in two separate judicial proceedings. We have previously provided you with the case citation to the decision of *Mueller v. Garske*, 1 Wn. App. 406, 461 P.2d 886 (1969) and also *Hamilton v. State Farm*, 270 F.3d 778, (9th Cir. 2001). Specifically, these cases stand for the proposition that one may not maintain inconsistent positions in separate actions. This is based upon the doctrine of judicial estoppel.
> Your client testified under oath that several of the tool items contained on the inventory of allegedly stolen items were used in business. Your client testified that the business closed down in 2012 which is after your client's bankruptcy filing. Your client testified that the tools were his

and not tools owned by the business. And yet, under Schedule B, Category 29, your clients swore under penalty of perjury that they owned no machinery, fixtures, equipment, and supplies used in business. See also Category No. 28 concerning office equipment.

Allstate believes that it is material and relevant to its investigation of the insurance claim as to whether or not your clients owned items such that they should have been disclosed in the bankruptcy petition. By swearing under penalty of perjury that they did not own these items as of 2011, it is inconsistent and a misrepresentation for them to claim they now did in fact own these items. This is the well settled doctrine of judicial estoppel.

Pursuant to 11 USC § 1527(c), your clients were required to seek counseling through a debt relief agency prior to the filing of the bankruptcy petition. The specifics of this counseling were to provide your clients with specific guidelines on "how to value assets at replacement value . . . ."

Several additional examples include, but are not limited to, your clients' submission of certain claims to Allstate in comparison with their Schedule B submittal to the United States Bankruptcy Court. Both documents were purportedly submitted under penalty of perjury. Both documents cannot be reconciled given your clients' inconsistent testimony. Examples include, but are not limited to your clients' submission of an insurance claim for loss of tools. As identified by your clients, these tools were acquired before they filed bankruptcy. Your clients have listed several high end tools such as Snap-on. The aggregate actual cash values of these tools allegedly in possession of your clients before the filing of the bankruptcy far exceed the amount listed in Schedule B, line item no. 4.

Additionally, there are several single line items which exceed the value of $400.00 as identified in your clients' Schedule B bankruptcy filing. The aggregate value listed by your clients of $3,000.00 for all household goods and furnishings also includes the aggregate value of all of the remaining non-stolen items claimed by your clients. Your clients confirmed that they have testified under oath that all of the information submitted to the bankruptcy court was true and correct. When comparing the bankruptcy submittal with the inventory submitted to Allstate, both statements cannot be correct. Whether or not Snap-on tools which were apparently not disclosed to the bankruptcy trustee is relevant and germane to Allstate's coverage investigation to determine whether or not any coverage owes for the theft of these items.

*Id*. at 2–3.

This suit followed.

# III.  DISCUSSION

The Sousies move for partial summary judgment on their breach of contract claim. Allstate moves for summary judgment that coverage is precluded under the policy.

**A.     Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

As further set forth below, both parties move for summary judgment on claims to which the respective party bears the burden of proof. Accordingly, "*where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation omitted); *see also Southern Calif. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

**B. Judicial Estoppel**

Allstate requests that the Court invoke the doctrine of judicial estoppel to bar the Sousies from asserting an inconsistent position in this matter. "Federal law governs the application of judicial estoppel in federal courts . . . ." *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 992 (9th Cir. 2012) (citing *Johnson v. Oregon*, 141 F.3d 1361, 1364 (9th Cir. 1998)). "Judicial estoppel is an affirmative defense." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 267 (5th Cir. 2012). It is the defendant's burden to

prove an affirmative defense. *Kraus v. Presidio Trust Facilities Div./Resid. Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009).

Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). Judicial estoppel is applied "because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

The Supreme Court has established certain factors that district courts may take into consideration when deciding whether judicial estoppel is appropriate in a given case: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party has successfully advanced the earlier position, such that judicial acceptance of an inconsistent position in the later proceeding would create a perception that either the first or the second court had been misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

In this case, Allstate argues that the Sousies have asserted inconsistent positions regarding ownership of personal property. In the 2011 bankruptcy proceeding, the Sousies declared that they owned (1) $3,000 worth of household goods and furnishings

with no single item worth more than $400, (2) some miscellaneous clothing and jewelry, and (3) a van worth $4,700. Dkt. 64-1. Then, in 2016, the Sousies claimed that they owned 167 items of personal property with a total estimated replacement cost of $27,297.90. Dkt. 64-4. While the possibility exists that these statements contain some inconsistencies, it is Allstate's burden to establish an actual inconsistency. Allstate fails to submit sufficient evidence to show that no reasonable trier of fact could find other than for Allstate. *Calderone*, 799 F.2d at 259. Instead, Allstate addresses the issue from a high level of generality by arguing that the Sousies must have misrepresented something because the claimed amount of personal property is drastically different in this matter compared to the bankruptcy proceeding. The Court agrees that, based solely on the different amounts, a reasonable juror could conclude that the Sousies misrepresented at least one item of personal property. The Sousies, however, have submitted sufficient evidence to show that numerous questions of fact remain on the issue of whether they have clearly asserted inconsistent positions.

For example, Allstate argues that the "Sousies now claim that their personal property owned at the time of the 2011 Bankruptcy was worth $34,763.08." Dkt. 61 at 10. This argument is based on the false premise that the Sousies owned every item that existed at the time of the bankruptcy. Obviously, the Sousies could not have owned items in 2011 that they claim were less than five years old in 2016. On the other hand, Allstate has failed to prove as a matter of fact that the Sousies owned every other item that was more than five years old in 2016. Mr. Sousie gave direct testimony that it was hard to remember when they acquired all of the items. Dkt. 62-2 at 55:8–13. Berry

Sousie also declares that he gave the Sousies numerous tools after the bankruptcy proceeding was terminated, but before the Sousies moved to Washington. Dkt. 66, ¶ 6. Thus, questions of fact exists on the issue of which items the Sousies owned or possessed in 2011 and allegedly failed to disclose in their bankruptcy schedule.

Furthermore, even if Allstate establishes that the Sousies owned any item of personal property, it bears the burden of establishing that the Sousies were required to disclose that item. *See, e.g., Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) ("Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively.") The Sousies argue that no single item exceeded their bankruptcy exemption of $400 and, in assessing value, the Sousies based their decision on what the trustee could receive for the item at an auction. Dkt. 80 at 8–9. If true, then the Sousies may not have been required to disclose any relevant item in their bankruptcy disclosures, and therefore the Sousies would not have misled the bankruptcy court. At the very least, questions of fact exist on this issue as well, especially in light of the different valuation methods used in bankruptcy proceedings as distinguished from Allstate's valuation criteria.

Finally, if Allstate proves that the Sousies owned an item that should have been disclosed, "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *New Hampshire*, 532 U.S. at 753 (internal quotation marks omitted). Although the Ninth Circuit has adopted common interpretations of "inadvertence" and "mistake" when the plaintiff reopens the bankruptcy

proceeding to disclose a previously undisclosed asset, the Court is unaware of and the parties have failed to cite any Ninth Circuit authority for the interpretation of these standards when the plaintiff does not reopen the bankruptcy proceeding. *See Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). Regarding the latter factual circumstance, the court noted that other circuits "have asked only whether the debtor knew about the claim when he or she filed the bankruptcy schedules and whether the debtor had a motive to conceal the claim." *Id.* Under this strict interpretation, Allstate must prove that the Sousies knew that they were required to disclose all personal property and were motivated to conceal these assets. It is true that, in some circumstances, motive may be inferred from the record, but the Sousies assert that they did not disclose some items of property because Maine law allowed a $400 exemption for each item of personal property.[3] In these circumstances, questions of fact exist on the issues of inadvertence and mistake. *See*, *e.g.*, *Jaeger v. Clear Wing Prods., Inc.*, 465 F. Supp. 2d 879, 882 (S.D. Ill. 2006) ("genuine issues of material fact certainly remain as to whether [the debtor's] failure to disclose constituted 'cold manipulation' or 'intentional contradiction' as opposed to a 'confused blunder' or 'simple error or inadvertence.'"). Therefore, the Court denies Allstate's motion for summary judgment on the doctrine of judicial estoppel.

---

[3] Maine law also allowed for a combined exemption of $10,000 for "tools of the trade" and an additional combined exemption of $12,000 in household items or tools of the trade because the Sousies did not claim a residence exemption. MRS §§ 4422(5), (16). Thus, the Sousies could have possibly asserted $22,000 in exemptions for personal property that they owned or possessed in 2011.

## C. Breach of Contract

In Washington, the insured bears the burden of proof to establish that the loss is within the contract of insurance and the insurer bears the burden of proof to establish that an exclusion applies to bar coverage. *Nw. Bedding Co. v. Nat'l Fire Ins. Co. of Hartford*, 154 Wn. App. 787, 791 (2010).

Regarding coverage, the Sousies assert that this issue is undisputed. Specifically, the Sousies contend that they have "established that they owned all of the items that were stored in their storage unit, and that the items they identified as having been stolen were in fact stolen." Dkt. 80 at 3. They also contend that Allstate "presents absolutely no evidence to the contrary." *Id*. While it's true that Allstate has failed to provide direct evidence that items claimed by the Sousies were neither owned nor stolen, Allstate has presented circumstantial evidence sufficient to establish a reasonable inference that the Sousies may not have owned all of the items claimed. For example, Allstate argues that, based on the Sousies' limited disclosure of personal property in their bankruptcy matter, it is reasonable to conclude that they may have "fabricated the lists of [allegedly stolen] items to secure insurance payments." Dkt. 82 at 2. The Court agrees with Allstate to the extent that a reasonable juror could reach this conclusion. Moreover, the Sousies bear a steep burden in moving for summary judgment on an element of one of their claims for relief. *See Calderone*, 799 F.2d at 259. For the purposes of the instant motions, the Court concludes that, viewing the evidence in the light most favorable to Allstate, the Sousies have failed to establish that no reasonable trier of fact could find other than for

the Sousies.  Therefore, the Court denies the Sousies' motion on the issue of whether all of the alleged losses are within the contract of insurance

Regarding the relevant exclusion, Allstate fails to fully brief and assert this position.  Allstate's position that this exclusion applies is based solely on a finding of judicial estoppel.  The Court has denied the motion on that issue, which requires denial of Allstate's motion on the application of this exclusion as well.  Even if Allstate establishes that the Sousies are clearly asserting inconsistent positions, legal issues exists as to the interpretation of the exclusion, the materiality of the misrepresentations, and severability of the items claimed.  *See*, *e.g.*, *Mutual of Enumclaw v. Cox*, 110 Wn.2d 643, 648–50 (1988).  Therefore, the Court denies Allstate's motion on this issue because it has failed to show that it is entitled to judgment as a matter of law.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Allstate's motion for summary judgment (Dkt. 61) and the Sousies' motion for partial summary judgment (Dkt. 63) are **DENIED**.

Dated this 18th day of April, 2018.

BENJAMIN H. SETTLE
United States District Judge